UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

T.W., a minor, by and through his
mother and natural guardian
Teresa Booher

    Plaintiff,

vs.

CHRIS MONTAVON, et al.,

    Defendants.

Case No. 1:10-cv-767

Spiegel, J
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against defendants Chris Montavon, Donald Bowling and Kirby Lawson alleging a deprivation of his Constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 1). Plaintiff's complaint alleges that while in the custody of the Ohio Department of Youth Services (ODYS) Defendants used excessive force and failed to protect him.[1] This matter is before the Court on Defendants' motion for summary judgment (Doc. 23) and the parties' responsive memoranda. (Docs. 26, 27).

    **I.**     **Facts**

The following facts are undisputed:

On November 10, 2009, the Plaintiff, Todd Webster, was in the custody of the Ohio Department of Youth Services (ODYS). Plaintiff was confined at the Ohio River

---

[1] Plaintiff's claims were bought against Defendant in their individual capacities.

1

Valley Juvenile Correctional (ORVJCF), which is a maximum security facility. (Doc. 26, Ex. A, "Montavon Aff., ¶ 3). Plaintiff had been transferred to ORVJCF because of an attempted escape from another institution. *Id*. He was assigned to Grant Unit at ORVJCF, which is the special management unit designed to house the highest risk individuals. *Id*. ¶ 2.

On November 9, 2009, at approximately 11:30 a.m., Defendant Lawson brought Plaintiff into Defendant Montavon's office to discuss an incident of the previous day. (*Id*. at ¶¶ 2, 3, 4-5; Doc. 25, Webster dep. at ¶17-18.) The parties agree that Plaintiff was handcuffed behind his back sitting in a chair. (Montavon Aff. at ¶ 7; Webster Dep. at 18, 21). The parties agree that Montavon told Plaintiff that he was moving to another room but Plaintiff refused. (Montavon Declaration, ¶¶ 8-9; Webster Deposition, at 19). Defendant Montavon then called Defendants Lawson and Bowing into the office. (Doc. 5 at 11). An altercation ensued and Plaintiff's wrist was broken. The parties dispute the facts relating the incident.

According to Defendant Montavon, when he informed Plaintiff that he would be moved to another room, Plaintiff reacted by saying something to the effect of, "Fuck it then," stood up, and grabbed the chair and threw it. (Doc. 23, Ex. A, Montovan Aff., ¶ 9; Ex. B, Lawson Aff., ¶ 4; Exhibit C, "Bowling Aff., ¶ 4). Plaintiff then charged towards Defendant Montavon. Defendant Montavon had unsuccessfully tried to back up against his filing cabinet and grab Webster's jumpsuit to move him to one side. (Montavon Aff, ¶¶10, 11). Since it was a small office, Montavon could not retreat any further. *Id*., 10.

Defendant Montavon and Plaintiff then fell to the floor; Plaintiff fell backwards, and

2

Defendant Montavon landed on top.  (Doc. 23, Bowling Aff, ¶ 5).  While Plaintiff was on the ground, he continued to struggle.  JCO Lawson and JCO Bowling entered the room and along with Defendant Montovan held on to Plaintiff's shoulders and waist to restrain him. After Plaintiff stopped struggling he was lifted off of the floor by his upper arms and escorted to his room by Defendant  Montavon and JCO Bowling who were holding him by the biceps.  (Montavon Aff., ¶ 14; Bowling Aff, ¶ 9).  After Webster was placed back in his room, he started yelling, making threats, and banging on the door.  (Bowling Aff , ¶ 13).

After the incident, Plaintiff told Nina Belli, investigator for ODYS that he had told Mr. Montavon, "You got me fucked up! I ain't movin."  (Doc. 23, Ex. D. Belli Aff., ¶ 3, Ex. D-1).  He also admitted to the investigator that he flipped over the chair and caused it to hit a window.  Plaintiff then told the investigator that Defendant Montavon grabbed him by the front of the chest, and they ended up falling on the floor.  *Id.*  At his deposition, Plaintiff later claimed that Defendant Montavon put him in a headlock and he started resisting.  (Doc. 25, Webster Dep, p. 19).  Plaintiff  never told Investigator Belli that Montavon put him in a headlock.  He also denied in his deposition that he had turned over his chair. Id., p. 20.

According to Plaintiff, when he refused to obey Montavon's order to get up and move to his new room, Montavon then put Plaintiff in a headlock, after which Bowling and Lawson entered the room. (Doc. 25, Webster Dep. at 19, 21- 22).  Plaintiff and Montavon then fell on the floor, with Plaintiff falling to the ground on his chest. *Id.* at 22. Lawson then grabbed Plaintiff's right arm while Bowling twisted Plaintiff's left wrist until it

3

popped. *Id.* Plaintiff also claims that Montavon punched him on the back of his head during the incident. *Id.*, at 24-25. Plaintiff testified that he was on the ground less than five minutes.

After Webster screamed that staff had broken his wrist, Bowling responded with, "ain't this what you've been waiting for?" *Id.* at 22. Montavon, Bowling, and Lawson then lifted him from the ground and escorted him out of Montavon's office as Bowling re-twisted Webster's left arm. *Id.* at 27. Staff escorted Plaintiff to an off-site clinic, and after a determination that it was broken, the wrist was casted. *Id.* at 31. Webster says he lied to ODYS Investigator Nina Belli when he admitted to throwing a chair and denied allegations of Montavon punching him during the incident. *Id.* at 20. However, at his deposition, Webster explained that he lied because he feared retaliation if he accused the Defendants of wrongdoing. *Id.,* at 25-26, 30.

In light of the foregoing, Plaintiff filed the instant action on June 7, 2011, asserting claims for excessive force and failure to protect pursuant 42 U.S.C. § 1983 against Defendants. (Doc. 4). Defendants now move for summary judgment on Plaintiffs' claims and assert that they are entitled to judgment as a matter of law.

II. **Analysis**

A. **Standard of Review**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

4

(1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323-24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The court need only determine "whether the evidence presents a sufficient disagreement to require

5

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

    **B.**    **Defendants' motion for summary judgment**

Defendants maintain that the evidence in this case is so one sided that no reasonable jury could find in favor of Plaintiff. Thus, Defendants assert that they are entitled to judgment as a matter of law because they acted reasonably under the circumstances. Defendants contend that they properly restrained Plaintiff after he engaged in violent behavior and did not engage in excessive force and/or fail to protect Plaintiff. Defendants further contend that they are entitled to qualified immunity because they acted reasonably. Plaintiffs asks the Court to deny Defendants' motion, asserting that genuine issues of material fact exist thereby precluding summary judgment.

    1.    *Applicable Law*

Plaintiff's complaint alleges that Defendant Bowling subjected him to excessive force by twisting his arm and breaking his wrist. Plaintiff further alleges that Defendants Montavon and Bowling were deliberately indifferent to his safety and failed to protect him from such assault in violation of his constitutional rights. Plaintiff's claims implicate the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or

6

laws of the United States and (2) that the deprivation was caused by a person acting under color of state law.  *Sigley v. City of Parma Hts.*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Prisoners are protected from the use of excessive force by the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The Eighth Amendment standard focuses on the official's "obdurancy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Id.* at 319-21.  The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993) (citation omitted).  In other words,

> [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton.

*Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010) (quoting *Watkin*s, 1996 WL 499094, at *2 (citations omitted).

To establish a constitutional violation based on failure to protect, a plaintiff also must show that prison officials acted with "deliberate indifference" to inmate health or safety.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or

7

safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837. To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety. *Farmer*, 511 U.S. at 834. An official disregards an excessive risk to inmate health or safety when he fails to "take reasonable measures to guarantee the safety of the inmates." *Id.*, at 833. When a prison official acts reasonably, he cannot be guilty of violating an inmate's constitutional rights. *Id.* at 845.

Thus, in the prisoner rights context, "summary judgment is inappropriate when there are issues of fact as to whether a defendant was aware of facts from which the inference could be drawn that a substantial risk of harm existed and whether he actually drew the inference." *Woods v. Lecureux*, 110 F.3d 1215, 1224 (6th Cir. 1997) (internal quotations and citations omitted).

2. *Qualified Immunity*

Defendants assert that they are entitled to qualified immunity on all claims brought against them in their individual capacities. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens

8

and expenses of litigation and trial.  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).  The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).  Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact.  *Pearson*, 555 U.S. at 231.

The Sixth Circuit has a three-prong test for evaluating a claim of qualified immunity.  First, the court determines whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.  Second, the court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Third, the court determines whether the plaintiff has offered sufficient evidence to indicating the alleged official actions were objectively unreasonable in light of clearly established constitutional rights.  *Meals v. City of Memphis, Tenn.,* 493 F.3d 720, 729 (6th Cir. 2007).  *See also  Saucier v. Katz,* 533 U.S. 194, 201 (2001).  Plaintiff bears the burden of showing that a right is clearly established.  *Everson v. Leis*,  556 F.3d 484, 494 (6th Cir. 2009).  Defendants, however, bear the burden of showing that the challenged actions

9

were objectively reasonable in light of the law existing at the time. *Id.*

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

### 3. Plaintiff's Excessive Force Claim

As noted above, in order to determine if Defendant's used excessive force in violation of Plaintiff's constitutional rights, the Court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. This inquiry also affects the applicability of Defendants' qualified immunity defense, as the first prong under the qualified immunity inquiry is whether a plaintiff's constitutional right was violated. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).

For purposes of summary judgment, the Court must accept the Plaintiff's version of events as true, and must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251-52. Under Plaintiff's version of the facts, after he refused Defendant Montovan's order to move rooms, Defendant Montavon put Plaintiff in a headlock. (Doc. 25 at 19). Plaintiff resisted and they both fell to the floor. At that point, Plaintiff asserts that Defendants Bowling and Lawson entered the room; Bowling restrained Plaintiff's left arm in a C-grip and Lawson

held Plaintiff's right arm. Bowling kept bending Plaintiff's wrist until heard a pop and Plaintiff began screaming. (Doc. 25 at 22). After the struggling stopped, Plaintiff asserts that Defendant Bowling re-twisted his left arm as he was being escorted to his cell. (Doc. 25 at 27). Plaintiff was eventually seen by a nurse and then transported off-site to the hospital where it was determined that his wrist was broken.

Defendants maintain that Plaintiff's previous behavior and inconsistent statements relating to the incident, as well as Defendants' credible testimony refuting Plaintiff's version of the incident would preclude a jury from finding that Defendants engaged in excessive force. Defendants note that Plaintiff was classified as one of the most dangerous youths in the Ohio Department of Youth Services. Plaintiff refused to follow directions after he was told he was moving to a new room. (Doc. 25; Webster Dep., p. 19).[2] Plaintiff originally admitted that he had uttered profanity and flipped over his chair causing it to hit the window after he was told that he was going to have to move to another room. (Doc. 23, Belli Aff., ¶ 3, Ex. D-1). He never informed Investigator Belli that he had been allegedly put in a head lock by Defendant Montavon. *Id*. Plaintiff also wrote in a statement that staff punched him, and then later admitted to the investigator that this was a lie. *Id.*

Defendants further assert that the medical evidence refutes Plaintiff's version of the facts. Notably, Plaintiff asserts that he suffered a fracture from JCO Bowling twisting his wrist. (Doc. 25, Webster Dep, p. 22). Defendants, however, have submitted an

---

[2] Plaintiff was being moved to a different unit because he climbed into the ceiling of the unit the day before. (Montavon Aff., ¶ 5).

11

affidavit from Dr. Bradley, the Medical Director at ODYS, asserting that the type of fracture at issue would have been caused by an impact, such as falling, and not by twisting.  (Exhibit E, Declaration of John Bradley, ¶¶ 4, 5).

Based on the record as presented to this Court, I have little choice but to recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's excessive force claims against Defendant Bowling.  Defendants' arguments are based upon issues of credibility, which this Court finds inappropriate to resolve on summary judgment.  Although a court may grant summary judgment when a Plaintiff's version of events is so improbable or contradicted by the record that it cannot be believed, that is not the case here.

Notably, Plaintiff's actions immediately before the incident and the way in which his wrist was injured remain disputed.  Defendants claim that Plaintiff cursed at Defendant Montavon and threw a chair, thereby justifying the use of force against Plaintiff.  Plaintiff denies both allegations.  Furthermore, while Dr. Bradley's testimony may create an issue of fact regarding how Plaintiff was injured, his opinion does not conclusively rule out that Defendants used excessive force.  Thus, neither the fact that Plaintiff may have given inconsistent statements about the incident nor the fact that a non-examining physician opined that Plaintiff's fracture likely occurred from an impact are so incredible that this Court should disregard Plaintiff's excessive force claims.  What this Court is left with then, is a clear dispute of material fact which cannot be resolved on Defendants' motion.

The undersigned finds that Defendant Bowling should not be entitled to qualified

immunity. First, it is undisputed that the right to be free from excessive force was clearly established at the time of the alleged violation. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir.2001) (citations omitted) ("This circuit has held that the right to be free from excessive force ... is a clearly established right for purposes of the qualified immunity analysis."). Second, Plaintiff's versions of the facts, if taken in a light most favorable to Plaintiff, demonstrate that the Defendant Bowling utilized excessive force in violation of the Eighth Amendment when he allegedly twisted Plaintiff's wrist. *Rutherford v. Lamneck*, No., 2:09-CV-914, 2012 WL 1598905 (S.D. Ohio May 7, 2012) report and recommendation adopted, 2:09-CV-914, 2012 WL 2031058 (S.D. Ohio June 6, 2012). Thus, because a jury must resolve the factual disputes before the Court can decide whether the amount of force utilized was reasonable under the circumstances, qualified immunity is not appropriate. *See Easley v. Haywood*, 1:08-CV-00601, 2011 WL 799795 (S.D. Ohio Mar. 2, 2011).

Because genuine issues of material fact remain as to whether Defendants' use of force violated Plaintiff' clearly established constitutional rights, the Defendant Bowling is not entitled to qualified immunity.

  4. *Plaintiff's Failure to Protect Claims*

Because there is a dispute regarding how he was injured, Plaintiff argues that there necessarily is a genuine issue of material fact regarding whether Defendants knew of, and consciously disregarded, an excessive risk of causing harm to him. According to Plaintiff, if he is right about the way the incident transpired, then a jury could also conclude that Defendants Montavon and Lawson, who allegedly stood by watching and

failed to protect Plaintiff, also disregarded an excessive risk of harm given that they were in a position to stop Bowling but did not. Plaintiff's assertions are not well-taken.

Contrary to Plaintiff's assertion, there is absolutely no evidence that Montavon and Lawson stood by watching Defendant Bowling allegedly assault Plaintiff. Here, Plaintiff testified that the incident lasted less than five minutes. The undisputed facts establish that while Plaintiff was on the ground, he was kicking and actively resisting Defendants attempt to restrain him. Such evidence does not suggest that Montavon and/or Lawson had a realistic opportunity to prevent Defendant Bowling from allegedly twisting Plaintiff's wrist. At best, it suggests that Montavan and Lawson's attempt to restrain Plaintiff may have been negligent. *See Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (Section 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights, negligence or recklessness is insufficient). Accordingly, Defendants are entitled judgment as a matter of law with respect to Plaintiff's failure to protect claims.

Even assuming that Plaintiff has established a question of fact relating to his claim that Montavon and Lawson failed to protect him in violation of his constitutional rights, Defendants are nonetheless entitled to qualified immunity because he has not shown that Defendants acted unreasonably. As explained below, qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). Viewing the facts in favor of Plaintiff, there is no evidence that Defendants Montovan and Lawson knowingly violated

14

the law.

## IT IS THEREFORE RECOMMENDED THAT:

Defendants' motion for summary judgment (Doc. 23) should be **GRANTED** as to Plaintiff's failure to protect claims, but **DENIED** as to Plaintiff's claims for excessive force against Defendant Bowling.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

T.W., a minor, by and through his
mother and natural guardian
Teresa Booher

   Plaintiff,

vs.

CHRIS MONTAVON, et al.,

   Defendants.

Case No. 1:10-cv-767

Spiegel, J
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

16